UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY WATSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-30 (RMC) |
| GOLD N DIAMONDS, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Anthony Watson alleges that he purchased jewelry from Gold N Diamonds using a "Gold N Diamonds" credit card, under terms that allowed two years of no payments. Wells Fargo Bank, N.A. ("Wells Fargo") asserts that he purchased the jewelry using a Wells Fargo credit card under terms that allowed only one year of no payments. The Complaint indicates that Mr. Watson signed a credit agreement. Because the terms of the credit agreement require disputes between the parties to be arbitrated, Wells Fargo's motion to stay and compel arbitration will be granted.

**I. FACTS**

On January 19, 2008, Mr. Watson purchased jewelry totaling approximately $5,000. He alleges that he "was under the impression that the purchase price was charged to his then existing credit card with Defendant Gold N Diamonds." Compl. [Dkt. # 1] ¶ 10. There is a receipt for the transaction. *See* Wells Fargo's Mot. to Compel Arbitration [Dkt. # 13] ("Mot. to Compel"), Ex. A ("Receipt"). The Receipt states that it was issued pursuant to a "Credit Agreement with Wells Fargo Financial National Bank." *Id*. The Credit Agreement states:

> YOU ACKNOWLEDGE RECEIPT OF A COPY OF THE CREDIT
> CARD ACCOUNT AGREEMENT. YOU ACKNOWLEDGE THE

EXISTENCE OF THE ARBITRATION AGREEMENT CONTAINED IN THE CREDIT CARD AGREEMENT AND SPECIFICALLY AGREE TO BE BOUND BY ITS TERMS.

*Id.*, Ex. B ("Credit Agreement") at 1. The arbitration agreement that is part of the Credit Agreement provides that Wells Fargo and the borrower agree as follows:

> (1) RIGHT TO ELECT TO ARBITRATE: Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to your Credit Card Account Agreement, or any prior or future dealings between us, resolved by binding arbitration. If any party covered by this agreement elects arbitration, that election is binding on all parties to this Agreement. A claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing this Agreement, or your willingness to abide by the term of this Agreement or the validity of this Agreement. Any such election may be made at any time. . . . . The filing of a lawsuit . . . does not mean that any party has waived the right to subsequently elect to submit a Claim to arbitration.

*Id.*, Ex. C ("Credit Card Terms") at 7.

Mr. Watson filed this suit, alleging that Wells Fargo and Gold N Diamonds, Inc. violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; and the District of Columbia Consumer Procedures Protection Act, D.C. Code § 28-3901 *et seq.* Compl. ¶¶ 15-33. Wells Fargo moved to stay and to compel arbitration.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, was passed by Congress "to establish an alternative to the complications of litigation." *Revere Copper & Brass v. Overseas Private Inv. Corp.*, 628 F.2d 81, 83 (D.C. Cir. 1980). The purpose to the FAA is to ensure that private contracts to arbitrate are enforced according to their terms. *Stolt-Nielsen S.A. v. AnimalFeeds*

*Int'l Corp.*, No. 08-1198, 2010 WL 1655826, at *11 (Apr. 27, 2010). Federal policy favors arbitration, and any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "By agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the court [ ] for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). An individual who agrees to arbitrate claims does not forego substantive rights afforded by statute; he merely submits to resolution in an arbitral rather than a judicial forum. *Id.* at 26. Courts routinely enforce arbitration agreements, including those in credit card agreements. *See, e.g., Discover Bank v. Vaden*, 489 F.3d 594, 607 (4th Cir. 2007), *rev'd on other grounds*, 129 S. Ct. 1262 (2009).

When a party seeks arbitration, a court must first determine whether there is a valid agreement to arbitrate. *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 150 (D.D.C. 2002). Then, the court must determine whether the specific dispute falls within the scope of the arbitration agreement. *Id.* To determine whether there is a valid arbitration agreement, federal courts apply ordinary state law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). While it is unclear whether D.C. or Maryland law governs, the Court does not have to decide because the same contract law principles apply under the law of both jurisdictions.[1]

---

[1] Federal courts apply the conflicts of law rules of the state in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491 (1941). Thus, to determine what law to apply, this Court must apply the District of Columbia's choice of law analysis. *See YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002). Under D.C. choice of law rules, the law of the jurisdiction with the most substantial interest in the matter applies. *See Nelson*, 215 F. Supp. 2d at 150. Courts consider (1) the place of contracting; (2) the place where the contract was negotiated; (3) the place of performance; (4) the location of the subject matter of the contract;

The party asserting the existence of a contract has the burden of proving its existence and that there was a meeting of the minds as to all material respects. *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000) (construing D.C. law); *see also Royal Investment Group, LLC v. Wang*, 961 A.2d 665, 681 (Md. Ct. Spec. App. 2008) (to establish a contract the minds of the parties must be in agreement at to its terms) (construing Maryland law). The party resisting arbitration bears the burden of proving that the claims asserted are not suited to or intended for arbitration. *Nelson*, 215 F. Supp. 2d at 150 (citing *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

One who signs a contract has a duty to read it and is obligated according to its terms. *Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962); *Pers Travel, Inc. v. Canal Square Assoc.*, 804 A.2d 1108, 1110 (D.C. 2002); *Holzman v. Fiola Blum, Inc.*, 726 A.2d 818, 831 (Md. Ct. Spec. App. 1999). A signature on a contract indicates a mutuality of assent to which a party is bound unless he can show some special circumstance such as fraud, duress, or mutual mistake. *Nelson*, 215 F. Supp. 2d at 151-52; *Holzman*, 726 A.2d at 831.

### III. ANALYSIS

In response to Wells Fargo's motion to compel arbitration, Mr. Watson asserts that the signature on the Receipt and the Credit Agreement is not his and thus that he is not bound by the arbitration agreement. *See* Pl.'s Opp'n at 3. In his Complaint, however, Mr. Watson alleges that he applied for a credit card with Gold N Diamonds when he purchased jewelry in 2005. Compl. ¶¶ 7,

---

and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1971). Mr. Watson is a D.C. resident who purchased jewelry at Gold N Diamonds in Maryland. Either D.C. or Maryland law applies. The Court need not decide which, as the general contract principles that apply here are the same in both jurisdictions.

12. At that time, "*the sales clerk directed Plaintiff to sign* a blank credit application so he could make credit inquiries . . . ." *Id*. ¶ 7 (emphasis added). He alleges that "the Defendants used the blank credit card application *he signed* in 2005 . . . ." *Id*. ¶ 12 (emphasis added). Under well-settled case law, a party is generally bound by the facts he alleges in his pleadings. *See, e.g., Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (collecting cases from numerous circuits); *Nat'l Shopmen Pension Fund v. Disa*, 538 F. Supp. 2d 95, 99 (D.D.C. 2008) (citing *Rann v Chao*, 209 F. Supp. 2d 75, 82 (D.D.C. 2002)). In light of the facts alleged in the Complaint, namely that Mr. Watson signed a credit agreement, Mr. Watson cannot now avoid arbitration. The arbitration clause is broadly drafted, as it applies to "any claim" "of any kind" including disputes regarding whether a particular claim must be submitted to arbitration. *See* Credit Card Terms at 7. Moreover, the arbitration clause provides that it governs "any prior or future dealings" between the parties. *Id*. The Court will compel arbitration in this case. In arbitration, Mr. Watson may argue that his claims are not arbitrable.

### IV. CONCLUSION

As explained above, the motion to stay and compel arbitration filed by Wells Fargo [Dkt. # 13] will be granted.[2] The parties shall arbitrate the disputes set forth in the Complaint, and this case will be stayed pending a decision of the arbitrator. A memorializing Order accompanies this Memorandum Opinion.

Date: September 14, 2010
/s/
ROSEMARY M. COLLYER
United States District Judge

---

[2] Wells Fargo moved to stay or dismiss, pending arbitration. Because the Court stays this case, the request for dismissal is denied.